IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HEIDI PETERMANN, | CASE NO. 1:04cv5706 AWI TAG |
| Plaintiff, | FINDINGS AND RECOMMENDATIONS ON PLAINTIFF'S APPEAL FROM ADMINISTRATIVE DECISION |
| v. | |
| JO ANNE B. BARNHART, Commissioner of Social Security, | |
| Defendant. | |

Heidi Petermann ("claimant" or "plaintiff") seeks judicial review of an administrative decision denying her claim for disability benefits under the Social Security Act ("Act"). Pending before the Court is claimant's appeal from the administrative decision of the Commissioner of Social Security ("Commissioner"). Claimant filed her complaint on May 14, 2004, and her opening brief on December 15, 2004. The Commissioner filed her opposition to the appeal on March 18, 2005. Claimant filed a reply brief on April 6, 2005.

**JURISDICTION**

On February 25, 2002, claimant filed applications for Disabled Adult Child ("DAC") benefits and Supplemental Security Income ("SSI") benefits, alleging a disability onset date of February 7, 2002, due to fibromyalgia and hypoglycemia. (Administrative Record ("AR") 49-54, 64, 274-277). The applications were denied initially and on reconsideration.

After timely requesting a hearing, claimant appeared before Administrative Law Judge ("ALJ") Rocklin D. Lyons on July 8, 2003, at which time he heard testimony solely from claimant. (AR 281-297). On August 28, 2003, the ALJ issued a decision finding that claimant was not disabled. (AR 19-24). The Appeals Council denied a request for review on February 28, 2004. (AR 8-11). The Appeal Council's decision became the final decision of the Commissioner, which is appealable to the district court pursuant to 42 U.S.C. § 405(g). Claimant filed this action for judicial review pursuant to 42 U.S.C. § 405(g).

**STATEMENT OF FACTS**

The facts have been presented in the administrative hearing transcript, the ALJ's decision, the briefs of both claimant and the Commissioner and will only be summarized here. Claimant was born on February 21, 1983, making her 20 years old on the date of the ALJ's decision. (AR 274, 24). Claimant indicated that she completed high school and attended two years of college courses. (AR 284). Claimant indicated that she became unable to work on February 7, 2002, due to hypoglycemia and a flare up of her fibromyalgia. (AR 64). She testified that she last worked in February of 2002 as a receptionist and a bookkeeper for a tax company. (AR 285).

Claimant testified at the administrative hearing held on July 8, 2003, that she is married, she has one step-daughter that does not reside with her and she currently lives in her mother's home. (AR 285-286). Claimant stated that she spends her day sleeping, moving from the couch to the recliner to her bed, and watching television. (AR 287). She indicated that she occasionally cooks, does about one load of laundry a day and goes out to dinner with her husband once or twice a month. (AR 287). Other than arthroscopic surgery on her knee three years prior to the hearing, claimant had not been recently hospitalized. (AR 288). She testified that the surgery on her knee was performed due to a possible meniscus tear but surgery revealed no such tear, and the pain was attributed to claimant's fibromyalgia. (AR 291).

Claimant stated that her fibromyalgia caused her soreness and made it difficult to "get around." (AR 289). She described her symptoms as one day having to be confined to bed and then the next day "you could be up running a marathon." (AR 289). She indicated that she wears braces on both of her wrists, three to four times a week and every night, due to soreness in her hands and

sensitive fingers. (AR 289-290). Claimant testified that she also has problems with migraine headaches, soreness in her feet and Achilles' tendons, and tightness and pain in the muscles in her back and shoulders. (AR 290-291).

Claimant stated that she could lift and carry only about three pounds without pain, could probably walk 25 to 50 feet on an average day, could stand in one place for about 10 minutes before feeling the need to sit, and could sit for 15 to 20 minutes before feeling the need to stand. (AR 293). She indicated that bending forward at the waist caused her no problems, but that she could not kneel, stoop, or squat without pain. (AR 293-294). She testified that she has difficulty with sleeping at night, problems with grasping with her hands, and often falls down due to her legs going numb while seated or sleeping. (AR 294-295). Claimant stated that she experiences numbness in her legs and hands, and the hand numbness occurs daily. (AR 295). She also indicated that she takes Zoloft for serotonin manipulation and depression, but was not being treated by a psychologist or psychiatrist. (AR 296). She testified that she did not fell that she was getting better, but she stated that she believed her condition was better now than when she was working. (AR 297).

## SEQUENTIAL EVALUATION PROCESS

The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The Act also provides that a claimant shall be determined to be under a disability only if her impairments are of such severity that claimant is not only unable to do her previous work but cannot, considering claimant's age, education and work experiences, engage in any other substantial gainful work which exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled. 20 C.F.R. §§ 404.1520, 416.920. Step one determines if she is engaged in substantial gainful activities. If she is, benefits are denied. 20 C.F.R. §§ 404.1520(b), 416.920(b). If she is not, the decision maker proceeds to step two, which determines whether claimant has a medically severe impairment or combination of impairments. 20 C.F.R. §§

404.1520(c), 416.920(c).

If claimant does not have a severe impairment or combination of impairments, the disability claim is denied. If the impairment is severe, the evaluation proceeds to the third step, which compares claimant's impairment with a number of listed impairments acknowledged by the Commissioner to be so severe as to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(d), 416.920(d); 20 C.F.R. § 404 Subpt. P App. 1. If the impairment meets or equals one of the listed impairments, claimant is conclusively presumed to be disabled. If the impairment is not one conclusively presumed to be disabling, the evaluation proceeds to the fourth step, which determines whether the impairment prevents claimant from performing work she has performed in the past. If claimant is able to perform her previous work, she is not disabled. 20 C.F.R. §§ 404.1520(e), 416.920(e). If claimant cannot perform this work, the fifth and final step in the process determines whether she is able to perform other work in the national economy in view of her age, education and work experience. 20 C.F.R. §§ 404.1520(f), 416.920(f). See, Bowen v. Yuckert, 482 U.S. 137 (1987).

The initial burden of proof rests upon a claimant to establish a *prima facie* case of entitlement to disability benefits. Rhinehart v. Finch, 438 F.2d 920, 921 (9th Cir. 1971). The initial burden is met once a claimant establishes that a physical or mental impairment prevents her from engaging in her previous occupation. The burden then shifts to the Commissioner to show (1) that the claimant can perform other substantial gainful activity and (2) that a "significant number of jobs exist in the national economy" which claimant can perform. Kail v. Heckler, 722 F.2d 1496, 1498 (9th Cir. 1984).

**STANDARD OF REVIEW**

Congress has provided a limited scope of judicial review of a Commissioner's decision. See, 42 U.S.C. § 405(g). A court must uphold the Commissioner's decision, made through an ALJ, when the determination is not based on legal error and is supported by substantial evidence. See, Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985); Sanchez v. Secretary of Health & Human Services, 812 F.2d 509, 510 (9th Cir. 1987) (two consulting physicians found applicant could perform light work contrary to treating physician's findings). "The [Commissioner's] determination that a claimant is

4

not disabled will be upheld if the findings of fact are supported by substantial evidence." Delgado v. Heckler, 722 F.2d 570, 572 (9th Cir. 1983) (*citing* 42 U.S.C. § 405(g)). Substantial evidence is more than a mere scintilla, Sorenson v. Weinberger, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975), but less than a preponderance. McAllister v. Sullivan, 888 F.2d 599, 601-602 (9th Cir. 1989); Desrosiers v. Secretary of Health and Human Services, 846 F.2d 573, 576 (9th Cir. 1988). Substantial evidence "means such evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (citations omitted). "[S]uch inferences and conclusions as the [Commissioner] may reasonably draw from the evidence" will also be upheld. Mark v. Celebrezze, 348 F.2d 289, 293 (9th Cir. 1965). On review, the court considers the record as a whole, not just the evidence supporting the decision of the Commissioner. Weetman v. Sullivan, 877 F.2d 20, 22 (9th Cir. 1989) (*quoting* Kornock v. Harris, 648 F.2d 525, 526 (9th Cir. 1980)).

It is the role of the trier of fact, not this court, to resolve conflicts in evidence. Richardson, 402 U.S. at 400. If evidence supports more than one rational interpretation, the court must uphold the decision of the ALJ. Allen v. Heckler, 749 F.2d 577, 579 (9th Cir. 1984). Nevertheless, a decision supported by substantial evidence will still be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. Brawner v. Secretary of Health and Human Services, 839 F.2d 432, 433 (9th Cir. 1987). Thus, if there is substantial evidence to support the administrative findings, or if there is conflicting evidence that will support a finding of either disability or nondisability, the finding of the Commissioner is conclusive. Sprague v. Bowen, 812 F.2d 1226, 1229-1230 (9th Cir. 1987).

**ADMINISTRATIVE FINDINGS**

The ALJ found at step one that claimant has not engaged in substantial gainful activity at any time since her alleged onset date, February 7, 2002. (AR 19). At step two, the ALJ determined that claimant has fibromyalgia, a severe impairment, but that she does not have an impairment or combination of impairments listed in or medically equal to one of the Listings impairments. (AR 19-20). The ALJ specifically indicated that while claimant complained of migraine headaches, the migraine headaches were considered non-severe impairments since they were controlled by diet and medication and only had a minimal effect on her ability to work. (AR 20). The ALJ also noted that

although claimant alleged hypoglycemia as an impairment, the medical record revealed that hypoglycemia is not limiting as long as claimant watches her diet, and although claimant testified that she needed to wear wrist braces, there was no current evidence supporting the necessity of continued use of the wrist braces. (AR 20).

The ALJ determined that claimant has the residual functional capacity ("RFC") to lift and carry 20 pounds occasionally and 10 pounds frequently, to sit, stand, or walk up to six hours in an eight-hour workday and could only occasionally climb. (AR 20). The ALJ thus found that claimant was capable of performing light exertion work. (AR 20). In reaching his RFC determination, the ALJ considered claimant's subjective complaints and found that they were not entirely credible. (AR 22).

The ALJ found that claimant does not have past relevant work to be considered. (AR 22). However, the ALJ applied the Medical-Vocational Guidelines ("grids") to the case to come to a conclusion that claimant was not disabled. (AR 22-24). The ALJ held that, based on claimant's RFC, age, education, and work experience, grid rule 202.20 directed a finding that claimant was "not disabled." (AR 22). Accordingly, the ALJ found that claimant was not disabled within the meaning of the Social Security Act. (AR 22-24).

**ISSUES**

Claimant contends that the Commissioner erred as a matter of law. Specifically, she argues that:

1. The ALJ erred by failing to provide sufficient reasons to reject the opinions of claimant's treating rheumatologist, Martin Berry, M.D.;[1] and

2. The ALJ erred by finding claimant's subjective complaints not entirely credible.

This court must uphold the Commissioner's determination that claimant is not disabled if the Commissioner applied the proper legal standards and there is substantial evidence in the record as a

---

[1] As correctly assessed by the Commissioner, claimant refers to a "Dr. Bailey" frequently in her opening brief (Court Doc. 8, pp. 4-6); however, there is no physician by this name in the record and where claimant discussed the findings of this physician, she cites to the records of Dr. Berry. (Court Doc. 14, p. 9). Claimant's reply brief also makes reference to Dr. Berry, as opposed to a "Dr. Bailey." It is therefore presumed that claimant meant to argue that the ALJ incorrectly rejected the opinions of Dr. Martin Berry.

6

whole to support the decision.

**DISCUSSION**

**A. Credibility**

Claimant asserts that the ALJ erred by finding her subjective complaints not credible. (Court Doc. 8, pp. 6-10). Claimant argues that the ALJ failed to proved clear and convincing reasons for rejecting her claims. (Court Doc. 8, p. 8).

It is the province of the ALJ to make credibility determinations. Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995). However, the ALJ's findings must be supported by specific cogent reasons. Rashad v. Sullivan, 903 F.2d 1229, 1231 (9th Cir. 1990). Once the claimant produces medical evidence of an underlying impairment, the ALJ may not discredit her testimony as to the severity of an impairment because it is unsupported by medical evidence. Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998) (citation omitted). Absent affirmative evidence of malingering, the ALJ's reasons for rejecting the claimant's testimony must be "clear and convincing." Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1995). "General findings are insufficient: rather the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." Lester, 81 F.3d at 834; Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir. 1993).

The ALJ determined that claimant's subjective complaints were not entirely credible. (AR 22). Claimant testified that she could lift and carry only about three pounds without pain, could probably walk 25 to 50 feet on an average day, could stand in one place for only about 10 minutes before feeling the need to sit, and could sit for 15 to 20 minutes before feeling the need to stand. (AR 293). In support of the ALJ's finding that claimant lacked credibility, the ALJ indicated that although claimant has testified to substantial limitations of daily activities, she testified that she is able to care for her personal needs, do laundry daily, and care for her pet dog. (AR 22). In addition, the ALJ noted that the record reflects that claimant takes anti-inflammatory and narcotic medications which were effective in controlling her symptoms. (AR 22).

The ALJ found that claimant's reports of daily activities undermined her credibility. (AR 22). The nature of daily activities may be considered when evaluating credibility. Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989). Claimant testified that she occasionally cooks, does about one

load of laundry a day and goes out to dinner with her husband once or twice a month. (AR 287). The ALJ properly found that such activities were inconsistent with a finding that claimant is restricted to the performance of less than light exertion work.

The ALJ also concluded that the record reflects that claimant takes anti-inflammatory and narcotic medications which were effective in controlling her symptoms. (AR 22). An impairment that responds well to treatment is a factor that may serve as a basis for finding a claimant's credibility lacking. Crane v. Shalala, 76 F.3d 251, 254 (9th Cir. 1996). As noted by the Commissioner, in February of 2002, claimant's treating physician, Dr. Berry prescribed medications for claimant's fibromyalgia flare-ups. (AR 210). In April of 2002, Dr. Berry assessed her fibromyalgia as stable. (AR 208). In addition, claimant testified at the administrative hearing that Lidocaine injections and soaking in her Jacuzzi helped relieve her fibromyalgia symptoms. (AR 295-296).

Furthermore, as noted by the Commissioner, the medical record does not support the degree of limitations alleged by claimant at the administrative hearing. (Court Doc. 14, pp. 17-19). The limitations found Dr. Berry, upon whose opinion claimant heavily relies on in support of her claim of disability (see, infra), indicate that, in September of 2002, claimant could stand or walk for less than two hours in an eight-hour workday and sit for one to two hours (AR 203), and that, in June of 2003, claimant could sit, stand and walk for one hour at a time (AR 273). Even these extreme limitations noted by Dr. Berry are less severe than the limitations alleged by claimant at the administrative hearing. Moreover, a state agency non-examining physician found in April of 2002 that claimant could occasionally lift and/or carry 50 pounds, frequently lift and/or carry 25 pounds, stand and/or walk and sit about six hours in an eight-hour workday. (AR 162). A different state agency non-examining physician opined in November of 2002 that claimant was capable of occasionally lifting and/or carrying 20 pounds, frequently lifting and/or carrying 10 pounds, standing and/or walking and sitting about six hours in an eight-hour workday. (AR 241). On April 15, 2002, examiner Tomas B. Rios, M.D., observed claimant as a well-developed, well-nourished female appearing to be in no severe distress. (AR 158). He indicated that she moved about the room "smoothly without any gait problems" and was capable of getting on and off the examination table unassisted and without an

significant difficulty. (AR 158). Dr. Rios opined that claimant should only be precluded from very heavy work with restrictions of being able to lift and carry no more than 50 pounds on an occasional basis or 25 pounds on a frequent basis. (AR 159). Accordingly, the medical record, including reports from claimant's treating physician upon whom she places great reliance, does not support limitations to the extent claimant alleged. In fact, no medical professional of record restricted claimant to the extent she alleges herein.

The ALJ is responsible for reviewing the evidence and resolving conflicts or ambiguities in testimony. Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989). It is the role of the trier of fact, not this court, to resolve conflicts in evidence. Richardson, 402 U.S. at 400. The court has a limited role in determining whether the ALJ's decision is supported by substantial evidence and may not substitute its own judgment for that of the ALJ even if it might justifiably have reached a different result upon de novo review. 42 U.S.C. § 405(g). After reviewing the record, the undersigned judicial officer finds that the reasons provided by the ALJ for discounting claimant's subjective complaints are sufficient and supported by substantial evidence in the record. The weight of the record evidence suggests that claimant's impairments were not as troublesome as she alleged, and the reasons provided by the ALJ for finding her allegations not entirely credible are clear and convincing. Accordingly, the ALJ did not err by concluding that claimant's allegations regarding her limitations were not entirely credible in this case. (AR 22).

**B. Treating Physician Opinion**

Claimant contends that the ALJ also erred by failing to set forth legally sufficient reasons for rejecting the opinion of her treating physician, Martin Berry, M.D. (Court Doc. 8, pp. 4-6). Claimant asserts that the ALJ failed to offer specific and legitimate reasons to reject Dr. Berry's opinions. (Court Doc. 8, p. 4). The undersigned disagrees.

In a disability proceeding, the treating physician's opinion is given special weight because of his familiarity with the claimant and her physical condition. Fair v. Bowen, 885 F.2d 597, 604-05 (9th Cir. 1989). However, the treating physician's opinion is not necessarily conclusive as to either a physical condition or the ultimate issue of disability. Magallanes v. Bowen, 881 F.2d 744, 751 (9th Cir. 1989) (citations omitted); see, also, 20 C.F.R. § 404.1527. To reject the treating physician's

opinion, the ALJ must state specific, legitimate reasons that are supported by substantial evidence. Flaten v. Secretary of Health and Human Serv., 44 F.3d 1453, 1463 (9th Cir. 1995); Fair, 885 F.2d at 605. Historically, the Ninth Circuit courts have recognized conflicting medical evidence; the absence of regular medical treatment during the alleged period of disability; and the lack of medical support for doctors' reports that are based substantially on the claimant's subjective complaints of pain, as specific legitimate reasons for disregarding the treating physician's opinion. Flaten, 44 F.3d at 1463-64; Fair, 885 F.2d at 604.

The ALJ addressed Dr. Berry's reports noting as follows:

> The medical evidence shows that in November 1997 rheumatologist Dr. M. Berry examined the claimant for complaints of widespread muscle pain; the complaints and examination findings varied thereafter. Initially the diagnosis of fibromyalgia was rejected, but in December 1999 Dr. Berry concluded that the claimant had fibromyalgia, without active inflammation . . . . He examined the claimant on February 7, 2002 and concluded that she was having a fibromyalgia flare, and certified her disability from February 25, 2002 to May 25, 2002. The examination findings showed that the claimant had decreased range of movement in her shoulder because of tightness, but good range of motion in the carpal hand bones . . . . Laboratory testing showed a low positive for anti-nuclear antibody . . . and mildly elevated C-reactive proteins . . . . Records through September 2002 show no change, and also that Dr. Berry completed additional disability papers at the claimant's request . . . .
>
> In September 2002 Dr. Berry completed an assessment of the claimant's fibromyalgia and of her functional capacity. He noted that the claimant had a normal range of movement in all joints; had essentially normal laboratory test results, and did not have joint swelling, loss of strength, or neurological dysfunctions. Dr. Berry stated that the claimant's pain and fatigue limited her walking, standing, or sitting. He stated that the claimant could occasionally lift less than 10 pounds, but lift no weight frequently, and could stand or walk less than 2 hours and sit less than 6 hours, in an 8-hour day. Dr. Berry noted that the claimant reported exacerbation of symptoms if these limits were exceeded . . . . In June 2003 Dr. Berry stated that the claimant was able, in an 8-hour day, to sit, stand, or walk for one hour each, lift no weight, and was precluded from even sedentary work . . . .

(AR 20).

Accordingly, the ALJ thoroughly reviewed Dr. Berry's medical records. However, the ALJ gave "little weight" to Dr. Berry's September 2002 and June 2003 assessments, which limited claimant to less than eight hours of daily exertion. (AR 21). The ALJ determined that those limitations appeared to be based on claimant's allegations,[2] rather than examination findings, and appeared to be accommodations to assist claimant in her pursuit of disability benefits. (AR 21). The

---

[2] As noted in Section A of these findings and recommendations, the ALJ properly determined that claimant's credibility was lacking in this case. See, supra.

10

ALJ specifically indicated that his discounting of Dr. Berry's opinions was supported by the fact that, in June of 2002, Dr. Berry certified that claimant was temporarily disabled by a fibromyalgia flare, and completed September 2002 and June 2003 assessments of permanent disability, assessments which are contradicted by the findings of other physicians of record. (AR 21).

Instead, the ALJ chose to accord substantial weight to the consultative examination performed by Tomas B. Rios, M.D., on April 15, 2002, and to the assessments of the state agency reviewing physicians. (AR 21, 157-160). Examiner Rios observed claimant as a well-developed, well-nourished female appearing to be in no severe distress. (AR 158). He indicated that she moved about the room "smoothly without any gait problems" and was capable of getting on and off the examination table unassisted and without an significant difficulty. (AR 158). Dr. Rios found that claimant had 18 of 18 tender points of fibromyalgia, yet her overall muscle bulk was strong and preserved. (AR 159). Dr. Rios opined that claimant should be precluded from very heavy work with restrictions of lifting and carrying no more than 50 pounds on an occasional basis or 25 pounds on a frequent basis. (AR 159). These findings were essentially corroborated by the nonexamining medical professionals who determined in April of 2002 that claimant could occasionally lift and/or carry 50 pounds, frequently lift and/or carry 25 pounds, stand and/or walk and sit about six hours in an eight-hour workday (AR 162) and in November of 2002 that claimant was capable of occasionally lifting and/or carrying 20 pounds, frequently lifting and/or carrying 10 pounds, standing and/or walking and sitting about six hours in an eight-hour workday. (AR 241). The ALJ specifically discounted the conclusion that claimant could lift 25 to 50 pounds since the record reflected that claimant would have some limitations stemming from muscle pains. (AR 21). Accordingly, based on the findings of these medical professionals, as well as claimant's complaints of fatigue and pain, the ALJ concluded that claimant had the capacity to perform light exertion work. (AR 21).

Dr. Berry's findings are contradicted by the opinions of Dr. Rios and the state agency physicians. Dr. Berry is the only physician of record to conclude that claimant is incapable of performing at least light exertion work. The ALJ fully considered and addressed Dr. Berry's opinions and properly found them unsupported and contradicted by the weight of the record evidence. (AR 20-21). The ALJ provided specific, legitimate reasons, supported by substantial

evidence, for rejecting Dr. Berry's September 2002 and June 2003 assessments. Accordingly, the ALJ did not err by finding Dr. Berry's opinions unpersuasive. Moreover, the evidence of record as a whole supports the ALJ's conclusion that claimant is capable of performing light exertion work.

**CONCLUSION AND RECOMMENDATION**

For the reasons discussed above, this Court finds no error in the ALJ's analysis and that the ALJ properly concluded claimant is not disabled. This Court further finds the ALJ's decision is supported by substantial evidence in the record as a whole and based on proper legal standards. Accordingly, this Court RECOMMENDS to DENY claimant's appeal from the administrative decision of the Commissioner of Social Security.

These Findings and Recommendations are submitted to United States District Judge Anthony W. Ishii, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 72-304. No later than October 17, 2005, any party may file written objections to these Findings and Recommendations with the Court and serve a copy on all parties and the Magistrate Judge and otherwise in compliance with this Court's Local Rule 72-304(b). Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Responses to objections shall be filed and served no later than October 31, 2005 and otherwise in compliance with this Court's Local Rule 72-304(d). A copy of the responses shall be served on the Magistrate Judge. The District Judge will review the Magistrate Judge's Findings and Recommendations, pursuant to 28 U.S.C. § 636(b)(1)(C). The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Judge's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

**Dated:   September 26, 2005**              /s/ Theresa A. Goldner
j6eb3d                                            UNITED STATES MAGISTRATE JUDGE